UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH ROBINSON,

    Petitioner,                                              Case No. 07-cv-14870

v.                                                    HONORABLE STEPHEN J. MURPHY, III

HUGH WOLFENBARGER,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This is a petition for a writ of habeas corpus. Petitioner Joseph Robinson, presently incarcerated at the Macomb Correctional Facility in New Haven, Michigan, filed a *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his convictions for second-degree murder, Mich. Comp. Laws § 730.317, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, on the grounds that his right of confrontation was violated; the prosecutor committed misconduct; the trial court improperly excluded testimony regarding witness Jonathan Taylor's reputation for lying; and newly discovered evidence that Taylor's testimony was false and induced by prosecutor and police threats establishes Robinson's innocence. For the reasons stated below, the application for writ of habeas corpus will be denied.

## BACKGROUND

This case arises from the shooting death of Deborah Turner in 2001. A City of Detroit police officer testified that he and his partner were dispatched to a vacant home on Artesian Street in Detroit at approximately 5:00 p.m. on September 24, 2001. The officer previously

had been to that vacant home on several occasions for drug-related investigations. When he and his partner entered the house, they found the body of a woman lying on the living room floor. She had obviously been shot. They also found five .22 caliber spent shell casings in the living room. The woman was later identified as Deborah Turner, and her cause of death was five gunshot wounds to the head.

Dianne Price testified that she was the younger sister of Deborah Turner. Price testified that Turner had a substance abuse problem. Price became concerned when, on the evening of September 23, 2001, Turner left the home they shared wearing only a nightgown and slippers. Price attempted to locate her sister that night, even driving past the home where Turner's body was found the next day. Price knew the home to be a drug house, but did not stop because she did not see her sister's vehicle outside the home.

Jonathan Taylor, Robinson's cousin, testified that he was selling drugs from the Artesian Street house in September 2001. Deborah Turner had purchased drugs at the house in the past. Taylor testified that, on September 23, 2001, he left the house at noon, leaving Robinson there with a .22 caliber pistol that was kept at the house for protection. Later that day, Robinson called Taylor and told him not to return to the Artesian Street house. Taylor also testified that, one or two days after the murder, Robinson said that he had shot someone who had been trying to rob him. Taylor was originally arrested for the murder. On cross-examination, he admitted that he and Robinson were not on good terms at the time of the murder.

Tanina Robinson, Robinson's cousin, testified that Robinson visited her home between 9:00 and 10:00 p.m. on September 23, 2001, and asked her to tell Jonathan Taylor not to go to the Artesian Street house.

Gwendolyn Suitt testified that she was Robinson's girlfriend until the summer of 2001, when she told him she was pregnant and he ended the relationship. Although they were no longer in a relationship, Robinson called Suitt on September 23, 2001, at 10:00 p.m., and asked whether he could come over to her house. Suitt initially declined, but agreed after Robinson persisted. He arrived at her apartment at approximately midnight. He stayed there for two days. At one point, he asked her if she would like to move to Montana with him. When she asked why Montana, he responded, "nobody thinks of Montana." Tr., 9/10/02 at 40. After Robinson left, Suitt learned that police had been in her home. They returned and showed her papers that they had taken from the pockets of a pair of pants that had been left in her home. She recognized the handwriting on the papers as Robinson's. One paper bore a baby name that they had discussed for their unborn child. On another paper, the words "Metro Airport" and "Amtrack" were written next to telephone numbers.

City of Detroit police officer Ahmed Haidar testified that, on December 24, 2001, he was part of a team that executed a search warrant at a known drug house in Detroit. Officer Haidar testified that he was stationed outside the rear of the home. When officers entered the front of the home, an individual he later identified as Robinson jumped through a closed window at the back of the home, shattering the glass. Officer Haidar detained Robinson. Robinson gave several false names and false birth dates. Officer Haidar ultimately determined Robinson's actual identity and he was arrested.

Robinson was charged in Wayne County Circuit Court with first-degree premeditated murder, first-degree felony murder, felon in possession of a firearm, and felony firearm. He was tried before a jury. At the close of the prosecution's case, the trial court granted

Robinson's motion for a directed verdict on the first-degree premeditated murder charge and reduced that charge to second-degree murder. Robinson was convicted of second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. Robinson was sentenced on October 3, 2002, as a fourth habitual offender to 50 to 100 years' in prison for the second-degree murder conviction, 2 to 5 years' in prison for the felon-in-possession conviction, to be served concurrently with one another and consecutively to 2 years' in prison for the felony-firearm conviction.

Robinson filed an appeal of right in the Michigan Court of Appeals, raising these claims:

  I. Defendant's constitutional rights of confrontation and due process were circumscribed when the court prevented the defense from arguing in closing that the chief prosecution witness had a motive to lie when such argument was based on trial evidence.

  II. The prosecution's repeated vouching for its key witness's truthfulness constitutes misconduct warranting reversal of these convictions.

  III. The court abused its discretion when it precluded testimony concerning Jonathan Taylor's character for untruthfuless.

The Michigan Court of Appeals affirmed the convictions. *People v. Robinson*, No. 246708, 2004 WL 1292613 (Mich. Ct. App. June 10, 2004).

Robinson filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Robinson*, 472 Mich. 852 (2005). Robinson also filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which was denied*. People v. Robinson,* No. 02-001497 (Third Circuit Court, Criminal Division, June 6, 2006). The Michigan appellate courts denied Robinson leave to appeal. *People v. Robinson,* No. 273666 (Mich. Ct. App. May 7, 2007); *lv. den.* 480 Mich. 858

4

(2007).

Robinson then filed a habeas corpus petition in this Court, raising the claims raised on direct review in state court. He later filed a request to hold this proceeding in abeyance so he could return to state court to present newly discovered evidence. The Court granted the motion. Robinson returned to state court and filed a motion for relief from judgment, raising claims that Jonathan Taylor's recantation testimony established Robinson's actual innocence and should allow Robinson a new trial. The trial court denied the motion. *People v. Robinson*, No. 02-001497-01 (Wayne County Cir. Ct. Dec. 10, 2009). Both state appellate courts denied Robinson's applications for leave to appeal. *People v. Robinson*, No. 296131 (Mich. Ct. App. Apr. 15, 2010); *People v. Robinson*, 488 Mich. 911 (Oct. 26, 2010). The Court then granted Robinson's motion to reopen this proceeding and amend his petition to include his newly-exhausted clams.

## LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs this case because Robinson filed the petition after the AEDPA's date of effect. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). This law restricts when a federal court may grant a petition for habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. But, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett,* 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n.7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.*" Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for

relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Under Section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court rendered its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.*" Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established

law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

A state court's factual findings are presumed correct on federal habeas review, *see* 28 U.S.C. § 2254(e)(1), and may be rebutted only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Furthermore, habeas review is limited by statute to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

## DISCUSSION

Robinson raises these claims for habeas relief:

I. Petitioner's constitutional rights of confrontation and due process were circumscribed when the court prevented defense from arguing in closing that chief prosecution witness had motive to lie when argument was based on evidence.

II. The prosecution's repeated vouching for its key witness' truthfulness constitutes misconduct warranting reversal of these convictions.

III. The court abused its discretion when it precluded testimony concerning Jonathan Taylor's character for untruthfulness.

IV. Petitioner was denied due process and his sentence is invalid where trial court granted motion for directed verdict on charge of first degree murder, constituting grant of acquittal such that jeopardy attached.

V. Prosecution witness Jonathan Taylor's recantation establishes newly discovered evidence requiring evidentiary hearing and appointment of counsel.

VI. Petitioner is actually innocent of the crime of which his is currently convicted and rightfully asserts his claim.

8

> VII. Prosecution witness Jonathan Taylor signed a sworn statement averring that his testimony was false, and induced by threats from the prosecution's office and Detroit police department establishing newly discovered evidence.

Respondent has filed an answer in opposition, arguing that the claims are meritless and the final three claims are procedurally defaulted.

I. Limitations on Closing Arguments

Robinson argues that he was denied his right to due process and confrontation when the trial court limited the scope of defense counsel's closing argument. Robinson argues that the trial court refused to allow defense counsel to argue based upon testimony presented at trial that Jonathan Taylor's testimony was false and motivated by allegations that Taylor had beaten up Robinson's sister, who was also Taylor's girlfriend.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right of confrontation encompasses the right of cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."). The right of cross-examination is not absolute. Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986). But the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)).

In this case, the trial court did not limit the scope of defense counsel's cross-

examination of Taylor. Instead, the trial court limited the scope of closing argument, finding that defense counsel was attempting to make an improper propensity argument. The Michigan Court of Appeals found no violation:

> Defendant first argues that, during closing argument, the trial court "circumscribed" his "right of confrontation and due process" by precluding defense counsel from using evidence elicited during her cross-examination of defendant's cousin, Jonathan Taylor, to argue that Taylor had a motive to lie about defendant. We disagree.
>
> At trial, Taylor testified that defendant told him "not to go home," and that he "shot someone for trying to rob him." During defense counsel's cross-examination of Taylor, counsel elicited testimony that Taylor and defendant were "not on good terms," that defendant did not "like" Taylor "beating up on his sister," and that defendant had threatened Taylor. Later, during closing argument, defense counsel stated:
>
>> We also, ladies and gentlemen, know something else about Jonathan Taylor. He admitted to you that he had an *assaultive history*. Remember he admitted to you that he had assaulted–
>
> The prosecutor objected, noting that the argument was "inappropriate." The trial court sustained the objection. Outside the presence of the jury, the trial court concluded that defense counsel sought to make an improper M.R.E. 404(b) argument, and that the evidence was not admitted for that purpose. The court noted that "the evidence came in during a discussion with the witness about any possible bias or motive that Mr. Taylor may have had to lie on his cousin," but that defense counsel was not allowed "to make the argument that because [Taylor] has an assaultive history that somehow makes him more of a person that assaults someone else or words to that effect:  That's a propensity argument which is inappropriate. That's precisely what the rules do not allow anyone to do."
>
> The purpose of closing argument is to allow the attorneys to comment on the evidence and to argue their theories of the law to the jury. *People v. Finley*, 161 Mich. App. 1, 9; 410 N.W.2d 282 (1987). The trial court has broad power and wide discretion to control closing arguments, *People v. Green*, 34 Mich.App. 149, 152; 190 N.W.2d 686 (1971), and a duty to limit the arguments of counsel to relevant and proper matters, see M.C.L. 768.29 and M.C.R. 6.414(A).
>
> We agree with the trial court that defense counsel attempted to use evidence that was admissible to show bias to make, instead, an improper M.R.E. 404(b) argument. Although defendant argues on appeal that the precluded argument would have demonstrated Taylor's motive to lie, nothing in the challenged

portion of defense counsel's argument inferred Taylor's motive or intent to lie because of the "bad blood" between defendant and Taylor. To the contrary, the only inference the "assaultive history" argument would have suggested is that Taylor had a propensity for assaulting women and acted in conformity with his character in murdering the victim. Because use of other acts evidence for the purpose of suggesting a propensity for similar conduct is prohibited, M.R.E. 404(b), the trial court did not abuse its discretion in precluding defense counsel from making the argument.

Furthermore, the record indicates that defense counsel was not precluded from arguing that Taylor was biased or had a motive to lie. In fact, defense counsel, without interference, fully explained her theory that Taylor was unbelievable. As such, contrary to defendant's claim, the trial court's ruling did not preclude defense counsel from arguing that Taylor was biased or had a motive to lie.

*Robinson*, 2004 WL 1292613 at *1-2.

It was not improper for the trial court to ensure that defense counsel refrained from arguing to the jurors that Taylor's assaultive history made him, not Robinson, the likely perpetrator in this case. The ruling was, in fact, in line with the common-law tradition that a prior crime is inadmissible to show a defendant's propensity to commit present charges. *See Old Chief v. United States*, 519 U.S. 172, 181–82 (1997). Defense counsel was permitted in closing argument to attack Taylor's credibility and motives for testifying in a variety of ways. The trial court's ruling, therefore, did not violat Robinson's rights to due process or confrontation.

II.   Prosecutorial Misconduct

Robinson argues that habeas relief should be granted because the prosecutor committed misconduct. Robinson contends that the prosecutor vouched for the credibility of prosecution witness Taylor when he made these two statements: "He's told the truth and said what the defendant told him." And: "This is about the Defendant attempting to frame an innocent man, Jonathan Taylor." *Robinson*, 2004 WL 1292613 at *2. The Michigan Court of Appeals held that the first comment may have been improper, but it did not

11

prejudice Robinson, and that the second argument was a fair response to defense counsel's arguments that Taylor was not credible and that Taylor was the "prime suspect." *Id.*

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (June 11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying King's prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 132 S. Ct. at 2155, (quoting *Harrington*, 131 S. Ct. at 786-87).

Prosecutors may not vouch for a witness's credibility. Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985).

"[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in

reaching outcomes in case-by-case determinations.'" *Parker*, 132 S.Ct. at 2155, (quoting *Yarborough*, 541 U.S. at 664). The Michigan Court of Appeals reasonably disposed of Robinson's prosecutorial misconduct claim. It was not improper for the prosecutor to characterize Robinson's defense as one attempting to point the finger of guilt at Taylor rather than himself. And, although the prosecutor's comment that Taylor was being truthful could be construed as improper, the statement was brief, not inflammatory, and, in light of the strength of the evidence against Robinson and the instruction advising the jurors that they alone were charged with determining the witnesses' credibility, did not prejudice Robinson. Even if the court of appeals erred in its holding, habeas relief would be denied because the court of appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct., at 786-787. Habeas relief, therefore, is denied.

III.   <u>Right to Present a Defense</u>

Next, Robinson argues that his right to present a defense was violated because the trial court would not allow him to present testimony concerning prosecution witness Jonathan Taylor's credibility. Specifically, the trial court would not allow Shalvase Chambers to testify that he believed Taylor was involved in the murder and that Taylor was not telling the truth when he blamed Robinson for the murder.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The Supreme Court has described the "most basic ingredients of due process

13

of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense – a right to his day in court – are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

*Washington*, 388 U.S. at 18 (quoting *In re Oliver*, 333 U.S. 257 (1948)).

Further, the Supreme Court described the right to present a defense as follows:

> The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.* at 19.

While the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). The exclusion of evidence is unconstitutional, though, where it "infringe[s] upon a weighty interest of the accused." *Id.* (citing *Rock*, 483 U.S. at 58). Because criminal defendants are guaranteed a "meaningful opportunity to present a complete defense," courts cannot exclude defense evidence under evidentiary rules that "serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes v. South Carolina*, 547 U.S. 319, 325-26 (2006).

The Michigan Court of Appeals denied this claim because it was impermissible under

Michigan law for a witness to comment on or provide an opinion on the credibility of another witness. *Robinson*, 2004 WL 1292613, at *4. This holding is in concert with Sixth Circuit precedent holding that "credibility determinations are meant for the jury, not witnesses." *Arnold v. Wilder*, 657 F.3d 353, 367-68 (6th Cir. 2011) (citation omitted). The limitations placed on Robinson's presentation of evidence, therefore, did not violate Robinson's right to present a defense.

IV.  Claims Related to Jonathan Taylor Affidavit

Robinson's remaining claims for habeas relief rely upon a single affidavit, that of Jonathan Taylor. In the affidavit, Taylor states that he wishes to recant his trial testimony because he "has not been truthful regarding the circumstances relating to Deborah Ann Turner's Death." Taylor Aff. ¶ 3, ECF No. 33. He further states that, contrary to his trial testimony, he did not have a conversation with Robinson in September 2001. Robinson argues that Taylor's affidavit demonstrates Robinson's actual innocence.

It is well-settled that claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 555 (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to

process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Muntaser v. Bradshaw*, 429 F. App'x 515, 521 (6th Cir. 2011) ("[A]n actual innocence claim operates only to excuse a procedural default so that a petitioner may bring an independent constitutional challenge, . . . Given that [petitioner] alleges only a free-standing claim to relief on the grounds of actual innocence, his claim is not cognizable . . . and, accordingly, does not serve as a ground for habeas relief."). Consequently, Robinson's claim that he is actually innocent and has newly-discovered evidence to prove his innocence fails to state a claim upon which habeas relief can be granted. Habeas relief is therefore not warranted on this basis.

Additionally, even if such a claim were viable upon habeas review, Robinson is not entitled to relief on such a basis. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "[A] credible claim of actual innocence is extremely rare," *Souter v. Jones*, 395 F.3d 577, 600 (6th Cir. 2012), and so "[t]he actual innocence exception should 'remain rare' and 'only be applied in the extraordinary case.'" *Id.* at 590 (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)).

In his undated affidavit, Taylor recants his trial testimony in a conclusory fashion, stating that he was pressured into testifying against Robinson. In *Freeman v. Trombley*, 483 F. App'x 51, 63 (6th Cir. 2012), the Sixth Circuit reaffirmed the rule that affidavits recanting sworn testimony are viewed with extreme suspicion. *See also McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007). Other than Taylor's affidavit, Robinson provides no other support for his actual innocence claim. The affidavit is devoid of any

16

supporting details or explanation for Taylor's recantation. It also does not clearly demonstrate Robinson's innocence. The bare-bones affidavit, which Robinson states was executed approximately seven years after the murder, is insufficient to establish Robinson's actual innocence or to make a credible allegation of police or prosecutorial misconduct. Habeas relief is not warranted on this claim.

V.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Robinson's petition for a writ of habeas corpus (document no. 1) is **DENIED**. This case is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 7, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 7, 2014, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager